**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

LANCE THORNTON,                                    Case No.:

      Plaintiff,

v.

UNITED STATES OF AMERICA; CITY OF
ERIE, PENNSYLVANIA d/b/a ERIE
POLICE DEPARTMENT; ERIE POLICE
OFFICER ANTHONY ATTALLA; ERIE
POLICE OFFICER MIKE ATTALLA; ERIE
POLICE OFFICER NICK BERNATOWICZ;
ERIE POLICE OFFICER IRA BUSH; ERIE
POLICE OFFICER/USMS TFO STEVEN
DELUCA; ERIE POLICE OFFICER NICO
FIORAVANTI; ERIE POLICE OFFICER
HAYDEN FOLTZ; ERIE POLICE OFFICER/
USMS TFO RYAN ONDERKO; ERIE
POLICE OFFICER ARTHUR RHOADES;
ERIE COUNTY DETECTIVE/USMS TFO
MARK ROSENTHAL; ERIE POLICE
OFFICER/FBI TFO JASON RUSSELL; ERIE
POLICE OFFICER JAKE SACK; ERIE
POLICE OFFICER DAN SHIELDS; ERIE
POLICE OFFICER DONALD
SORNBERGER; ERIE POLICE OFFICER
STEVEN UPLINGER; ERIE POLICE
OFFICER JOSH VOGEL; ERIE POLICE
OFFICER/FBI TFO JASON WILSON;
DEPUTY U.S. MARSHAL STEPHEN
BARNES; USMS TFO JESSE BAYLE;
USMS TFO MICHAEL DAVIS;
PENNSYLVANIA STATE TROOPER/
USMS TFO JESSE KING; UNKNOWN ERIE
POLICE OFFICER (BADGE NO. 393);
UNKNOWN ERIE POLICE OFFICER
(BADGE NO. 350); UNKNOWN ERIE
POLICE OFFICER (BADGE NO.
UNKNOWN) a/k/a "RUSSEL" and/or
"RUSS"; UNKNOWN ERIE POLICE
OFFICER (BADGE NO. 436); UNKNOWN
USMS TFO (BAGDE NO. UNKNOWN) a/k/a
"TFO BAYLE"; UNKNOWN USMS TFO

(BADGE NO. 5791); UNKNOWN
PENNSYLVANIA STATE TROOPER
(BADGE NO. 12547) a/k/a "JESSE"; AND
JOHN DOES 1-10,

      Defendants.

## PLAINTIFF'S COMPLAINT

AND NOW, comes the Plaintiff, Lance Thornton, by and through his undersigned counsel,

D. Aaron Rihn, Esquire, Sara J. Watkins, Esquire, Robert F. Daley, Esquire, and the law firm of

Robert Peirce & Associates, P.C., and claims damages of the Defendants and in support thereof,

he states as follows:

1.      This is an action brought under the Federal Tort Claims Act and the Fourth and

Fourteenth Amendments to the U.S. Constitution for the unlawful and unconstitutional acts of the

Defendants in engaging in an illegal warrantless search of the Plaintiff's residence, subjecting

Plaintiff to an unjustified detention and excessive force. The individual Supervisory Defendants[1]

who planned and authorized the entry and search of plaintiffs' residence, failed to secure a search

warrant and otherwise lacked the legally required cause to believe that the target of their

investigation, a fugitive from justice, was in the Plaintiff's residence at the time of the search. The

individual Supervisory Defendants thereafter authorized a forcible entry of the residence, and the

---

[1] Plaintiff was provided a list of officers that were involved in the incident by the United States Attorney General's Office. The list appeared to include twenty-one police officers and one emergency medical technician ("EMT"). Upon close examination of videos capturing the incidents alleged herein, it appears that approximately ten officers reported to the scene of the incident. Accordingly, Plaintiff is under the information and belief that several officers not at the scene of the incident, including potentially officers at the scene of the incident, planned and authorized the raid of Plaintiff's house; however, Plaintiff is without definitive information to identify each individual Supervisory Defendant at this time without fulsome discovery.

individual Defendant Officers[2] forcibly and illegally detained Plaintiff while other individual Defendant Officers[3] illegally searched Plaintiff's home without a warrant or consent. Defendants' actions were in violation of the Fourth Amendment to the United States Constitution and constituted tortious violations of the laws of the Commonwealth of Pennsylvania.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction over Plaintiff's federal civil rights claims pursuant to 28 U.S.C. §§ 1331, 1343, 1346. The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

3.      This Complaint alleges that the defendant officers committed civil rights violations under the Fourth Amendment to the United States Constitution and that their actions violated the laws of the Commonwealth of Pennsylvania. This action is authorized and instituted pursuant to the *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) and the Federal Tort Claims Act, 28 U.S.C.A. §1346(b), 2671, and 2680(h).

4.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 as at least one of the Defendants resides in this District and Division and the cause of action arose therein.

## CONDITIONS PRECEDENT

5.      All conditions precedent to this lawsuit, if any, have been satisfied or waived.

---

[2] Again, Plaintiff was provided a list of officers that were involved in the incident by the United States Attorney General's Office; however, the list did not specify the officers' names, badge numbers, or role in the incident. Plaintiff maintains that individual Defendant Officers detained him but, at this time, Plaintiff is not aware of the specific identifies of individual Defendant Officers that detained him.

[3] Once more, Plaintiff was provided a list of officers that were involved in the incident by the United States Attorney General's Office; however, the list did not specify the officers' names, badge numbers, or role in the incident. Plaintiff maintains that individual Defendant Officers searched his house without a warrant and without consent, but, at this time, Plaintiff is not aware of the specific identifies of individual Defendant Officers that illegally searched his home.

6.     Plaintiff provided Defendant United States of America detailed a detailed tort claim notice through a Form 95 submitted to the Department of Justice on May 14, 2024, nearly ten months ago. Plaintiff never received a response from the United States of America or the Department of Justice regarding the Form 95.

## PARTIES

7.     Plaintiff Lance Thornton, at all times material hereto, was a resident of the Commonwealth of Pennsylvania, Erie County.

8.     Defendant United States of America has waived any sovereign immunity to the claims against it in this lawsuit through the Federal Tort Claims Act.

9.     Defendant United States of America acted by and through the United States Marshals Service ("USMS"), its agents, servants, and employees, including but not limited to Erie Police Department ("Erie Police"), its agents, servants, and employees, and the Pennsylvania State Police ("PA State Police"), its agents, servants, and employees, all of whom were acting as Federal Officers and agents at the time of the incident.

10.     The U.S. Marshals Service maintains an address at 1215 S. Clark Street, Arlington, Virginia 22202 and is an agency of the Department of Justice.

11.     Defendant City of Erie, Pennsylvania d/b/a Erie Police Department maintains an address at 626 State Street, Erie, Pennsylvania 16501.

12.     The City of Erie, Pennsylvania owns and operates all branches of the Erie Police Department and as such, all agents, servants, and employees of the City of Erie, Pennsylvania, are employees or agents of the City of Erie. However, at all times relevant hereto, the agents, servants, and employees were acting under the direction of the USMS, and as such were Federal Officers.

13.    At all relevant times, Defendant Erie Police Officer Anthony Attalla ("Officer Anthony Attalla") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Anthony Attalla was acting at the direction of the USMS, and as such was a Federal Officer.

14.    At all relevant times, Defendant Erie Police Officer Mike Attalla ("Officer Mike Attalla") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Mike Attalla was acting at the direction of the USMS, and as such was a Federal Officer.

15.    At all relevant times, Defendant Erie Police Officer Nick Bernatowicz ("Officer Bernatowicz") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Bernatowicz was acting at the direction of the USMS, and as such was a Federal Officer.

16.    At all relevant times, Defendant Erie Police Officer Ira Bush ("Officer Bush") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Bush was acting at the direction of the USMS, and as such was a Federal Officer.

17.    At all relevant times, Defendant Erie Police Officer/USMS Task Force Officer ("TFO") Steven DeLuca ("TFO DeLuca") was an agent, servant, and/or employee of Erie Police Department and USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO DeLuca was acting at the direction of the USMS, and as such was a Federal Officer.

18.     At all relevant times, Defendant Erie Police Officer Nico Fioravanti ("Officer Fioravanti") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Fioravanti was acting at the direction of the USMS, and as such was a Federal Officer.

19.     At all relevant times, Defendant Erie Police Officer Hayden Foltz ("Officer Foltz") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Foltz was acting at the direction of the USMS, and as such was a Federal Officer.

20.     At all relevant times, Defendant Erie Police Officer/USMS TFO Ryan Onderko ("TFO Onderko") was an agent, servant, and/or employee of Erie Police Department and USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO Onderko was acting at the direction of the USMS, and as such was a Federal Officer.

21.     At all relevant times, Defendant Erie Police Officer Arthur Rhoades ("Officer Rhoades") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Rhoades was acting at the direction of the USMS, and as such was a Federal Officer.

22.     At all relevant times, Defendant Erie County Detective/USMS TFO Mark Rosenthal ("TFO Rosenthal") was an agent, servant, and/or employee of Erie Police Department and USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO Rosenthal was acting at the direction of the USMS, and as such was a Federal Officer.

23.     At all relevant times, Defendant Erie Police Officer/Federal Bureau of Investigation ("FBI") TFO Jason Russell ("TFO Russell") was an agent, servant, and/or employee of Erie Police

Department and USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO Russell was acting at the direction of the USMS, and as such was a Federal Officer.

24.     At all relevant times, Defendant Erie Police Officer Jake Sack ("Officer Sack") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Sack was acting at the direction of the USMS, and as such was a Federal Officer.

25.     At all relevant times, Defendant Erie Police Officer Dan Shields ("Officer Shields") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Shields was acting at the direction of the USMS, and as such was a Federal Officer.

26.     At all relevant times, Defendant Erie Police Officer Donald Sornberger ("Officer Sornberger") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Sornberger was acting at the direction of the USMS, and as such was a Federal Officer.

27.     At all relevant times, Defendant Erie Police Officer Steven Uplinger ("Officer Uplinger") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Uplinger was acting at the direction of the USMS, and as such was a Federal Officer.

28.     At all relevant times, Defendant Erie Police Officer Josh Vogel ("Officer Vogel") was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Officer Vogel was acting at the direction of the USMS, and as such was a Federal Officer.

29.    At all relevant times, Defendant Erie Police Officer/FBI TFO Jason Wilson ("TFO Wilson") was an agent, servant, and/or employee of Erie Police Department and USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO Wilson was acting at the direction of the USMS, and as such was a Federal Officer.

30.    At all relevant times, Defendant Deputy U.S. Marshal Stephen Barnes ("Deputy US Marshal Barnes") was an agent, servant, and/or employee of USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, Deputy US Marshal Barnes was acting at the direction of the USMS, and as such was a Federal Officer.

31.    At all relevant times, USMS TFO Jesse Bayle ("TFO Bayle") was an agent, servant, and/or employee of USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO Bayle was acting at the direction of the USMS, and as such was a Federal Officer.

32.    At all relevant times, USMS TFO Michael Davis ("TFO Davis") was an agent, servant, and/or employee of USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO Davis was acting at the direction of the USMS, and as such was a Federal Officer.

33.    At all relevant times, Defendant Pennsylvania State Trooper/USMS TFO Jesse King ("TFO King") was an agent, servant, and/or employee of Pennsylvania State Police ("PSP") and the USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, TFO King was acting at the direction of the U.S. Marshals, and as such was a Federal Officer.

34.    At all relevant times, Defendant Unknown Erie Police Officer (Badge No. 393) was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of

his employment as a police officer. However, at all times relevant hereto, Unknown Erie Police Officer (Badge No. 393) was acting at the direction of the USMS, and as such was a Federal Officer.

35.    At all relevant times, Defendant Unknown Erie Police Officer (Badge No. 350) was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Unknown Erie Police Officer (Badge No. 350) was acting at the direction of the USMS, and as such was a Federal Officer.

36.    At all relevant times, Defendant Unknown Erie Police Officer (Badge No. Unknown), who may have been referred to as "Russel" and/or "Russ" in video surveillance of the incident; was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Unknown Erie Police Officer (Badge No. unknown) a/k/a "Russel" and/or "Russ" was acting at the direction of the USMS, and as such was a Federal Officer.

37.    At all relevant times, Defendant Unknown Erie Police Officer (Badge No. 436) was an agent, servant, and/or employee of Erie Police Department, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Unknown Erie Police Officer (Badge No. 436) was acting at the direction of the USMS, and as such was a Federal Officer.

38.    At all relevant times, Defendant Unknown USMS TFO (Badge No. Unknown), who may have been referred to as "TFO Bayle" in video surveillance of the incident, was an agent, servant, and/or employee of USMS, and was acting within the scope of his employment as a police

9

officer. At all times relevant hereto, Unknown USMS TFO (Badge No. Unknown) a/k/a "TFO Bayle" was acting at the direction of the USMS, and as such was a Federal Officer.

39.    At all relevant times, Defendant Unknown USMS TFO (Badge No. 5791) was an agent, servant, and/or employee of USMS, and was acting within the scope of his employment as a police officer. At all times relevant hereto, Unknown USMS TFO (Badge No. 5791) was acting at the direction of the USMS, and as such was a Federal Officer.

40.    At all relevant times, Unknown Pennsylvania State Trooper (Badge No. 12547), who may have been referred to as "Jesse" in video surveillance of the incident, was an agent, servant, and/or employee of PA State Police, and was acting within the scope of his employment as a police officer. However, at all times relevant hereto, Unknown Pennsylvania State Trooper (Badge No. 12547) a/k/a "Jesse," was acting at the direction of the USMS, and as such was a Federal Officer.

41.    At all relevant times, John Does 1-10 were agents, servants, and/or employees of either the Erie Police, PA State Police, or USMS and were acting within the scope of their employment as police officers. However, at all times relevant hereto, John Does 1-10 were acting at the direction of the USMS, and as such was Federal Officers.

## FACTUAL ALLEGATIONS

42.    At the time of the incident, Plaintiff Lance Thornton, was a fifty-two-year-old man who had a pertinent medical history of early onset dementia.

43.    At approximately 0800 on March 12, 2023, Mr. Thornton was asleep at his home located at 410 Roslyn Avenue, Erie, Pennsylvania 16505.

44. At the same time, TFO DeLuca and another Erie Police officer whose name is currently unknown but is identifiable by his Badge Number 393 (hereinafter "Unknown Erie Police Officer 1") approached Mr. Thornton's home.

45. Before knocking on the door, TFO DeLuca and Unknown Erie Police Officer 1 noticed Mr. Thornton's Ring camera on the front door and deliberately destroyed two cameras and upon and information and belief confiscated one Ring doorbell.

46. TFO DeLuca and Unknown Erie Police Officer 1 were then joined by approximately seven other officers from the Erie Police Department, PA State Police, and the USMS. All law enforcement personnel were acting under the direction of the USMS.

47. Mr. Thornton was woken up to his security system alerting him of people at his property throughout multiple cameras.

48. This caused Mr. Thornton to jump out of bed and proceed downstairs to the front door.

49. The officers began breaking down the door with such force that the door no longer closes properly.

50. Mr. Thornton opened the door to several officers surrounding his house with their guns drawn towards Mr. Thornton. The officers ordered him out, and one officer pulled Mr. Thornton by his arm.

51. As they proceeded forward, Mr. Thornton told the officers, "you're not allowed inside. I want to know what's going on."

52.    An officer believed[4] to be TFO King (identifiable by his Badge Number 12547 and may have been referred to as "Jesse" by other officers at the scene)[5] told Mr. Thornton that the officers received a tip that a suspect wanted for attempted homicide was staying in Mr. Thornton's home.

53.    TFO King then asked for permission to search Mr. Thornton's home.

54.    Based upon the information relayed by the officers, Mr. Thornton initially consented to the officers searching his home.

55.    Mr. Thornton asked the officers for the search warrant, and after avoiding the questions several times, TFOs DeLuca and King revealed that they did not have a warrant to search Mr. Thornton's home, but that Mr. Thornton gave them consent to search.

56.    Mr. Thornton responded by saying his consent can be withdrawn at any time, which was confirmed by TFO King.

57.    Thereafter, several officers entered Mr. Thornton's home.[6]

---

[4] Plaintiff was provided a list of officers that were involved in the incident by the United States Attorney General's Office; however, the list did not specify each officer's badge number nor their roles in the incident. Plaintiff has reviewed and analyzed the various security camera videos that captured the incident in an attempt to identify each officer. Plaintiff accordingly will identify each officer's actions to the best of his ability upon his information and belief.

[5] The officer will hereinafter be referred to as TFO King, based upon Plaintiff's information and belief and alternatively, as Unknown PA State Trooper (Badge Number 12547).

[6] Upon information and belief, TFO DeLuca was one of the officers that entered Plaintiff's home. Additionally, upon information and belief, several other officers entered Plaintiff's home; however, the remaining officers' identifies are not certain. Notwithstanding, Plaintiff is able to describe the officers with the following details: an USMS TFO whose name and Badge Number are currently unknown, who may have been referred to as "TFO Bayle"; an Erie Police officer whose name is currently unknown but is identifiable by his Badge Number 393; an USMS TFO whose name is currently unknown but is identifiable by his Badge Number 5791; Erie Police officer whose name is currently unknown but is identifiable by his Badge Number 436; Erie Police officer whose name is currently unknown but is identifiable by his Badge Number 350; and potentially several other unidentifiable officers.

58.    While the officers searched Mr. Thornton's home, Mr. Thornton was left outside on his snow-covered lawn with TFO King.

59.    Scared and cold, Mr. Thornton asked TFO King what was going on and why Mr. Thornton was somehow connected to a wanted fugitive.

60.    TFO King initially did not answer Mr. Thornton's questions.

61.    Accordingly, Mr. Thornton revoked his consent to search the house, he yelled, "get out of my house, I'm withdrawing consent!... I'm withdrawing consent. Do you not hear it, you're on camera… they're still moving forward."

62.    Mr. Thornton repeated his revocation of consent several times.

63.    Video from inside the house captured Mr. Thornton's revocations, officers hearing the revocation, laughing, and continuing to search.

64.    After approximately forty-five seconds of Mr. Thornton continually withdrawing consent, TFO King confirmed the same via radio to the officers inside of the house.

65.    Notwithstanding, the officers continued to illegally search Mr. Thornton's house as he was held outside by TFO King.

66.    Pleading with TFO King, Mr. Thornton told TFO King that he was scared, confused, and had dementia.

67.    Despite continually yelling that he had withdrawn consent, the officers continued to search Mr. Thornton's home for the next seven minutes.

68.    From security footage captured inside the home, the officers were seen and heard inside of Mr. Thornton's house making fun of Mr. Thornton and his mental condition, spitting tobacco onto Mr. Thornton's floor and/or property, laughing at erotic toys stored in the bedroom,

and ultimately refusing to exit the home despite no longer having consent to be searching the home.

69.    Still outside while officers still searched the home, TFO King revealed to Mr. Thornton that the officers allegedly had information that Mr. Thornton's daughter had ties to the fugitive.

70.    TFO King asked if Mr. Thornton's daughter was inside, to which Mr. Thornton explained that she lives in Washington D.C.

71.    During the course of the illegal search, Mr. Thornton questioned PA State Trooper Badge Number 12547 why he was not allowed back into his house even after he withdrew consent.

72.    Notably, the whole time PA State Trooper Badge Number 12547 held Mr. Thornton outside, the State Trooper kept his hand on his gun.

73.    Mr. Thornton then walked to his parked car in his driveway to get a drink.

74.    While doing this, PA State Trooper Badge Number 12547 hovered over Mr. Thornton and asked Mr. Thornton what he was doing in his car. Mr. Thornton expressed that he was just getting a drink and was very worked up.

75.    Seven minutes after Mr. Thornton revoked his consent, the officers started to clear out of the house. Mr. Thornton asked each officer his name, agency, and badge number. Some officers responded with their agency and badge numbers and others refused to respond.

76.    After realizing that the fugitive was obviously not in Mr. Thornton's house, that Mr. Thornton did not know the fugitive, nor was the fugitive staying with Mr. Thornton's daughter, TFO DeLuca vaguely tells Mr. Thornton about the tip that gave rise to the search.

77.    Mr. Thornton told TFO DeLuca about his dementia and that he revoked consent to search his office.

78.     TFO Deluca maintained that consent was given but did not acknowledge that it was withdrawn and justified it by saying, "we are trying to find a guy wanted for homicide."

79.     Mr. Thornton continued to express confusion. Ultimately, the officers left Mr. Thornton's home without providing any other information.

80.     After enduring the stress of the illegal search, on March 19, 2023, Mr. Thornton began experiencing stroke-like symptoms. Mr. Thornton presented to the hospital where he was diagnosed with a Transient Ischemic Attack ("TIA").

**COUNT I:**
**FALSE ARREST/FALSE IMPRISONMENT**
**Federal Tort Claims Act**
**Plaintiff v. Defendant United States of America**

81.     Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

82.     At all times relevant hereto, the individual Defendant Officers were acting under color of law and within the course and scope of their employment as police officers, all of which were acting under the direction of the USMS.

83.     All of the individual Defendant Officers who entered the Plaintiff's home and/or planned/supervised the search were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

84.     As more fully set forth above, the individual Defendant Officers falsely imprisoned and falsely arrested Plaintiff when they detained Plaintiff without any reasonable articulable suspicion and arrested Plaintiff without probable cause.

85.     The individual Defendants Officers' acts of false imprisonment and false arrest are wrongful torts under Pennsylvania law.

86.     Plaintiff suffered emotional and physical pain and suffering, which developed into a TIA, for which he seeks economic and compensatory damages in amounts to be determined by the factfinder.

87.     Defendant United States of America is liable for the acts of the individual Defendant Officers under the Federal Tort Claims Act.

**COUNT II:**
**ASSAULT**
**Federal Tort Claims Act**
**Plaintiff v. Defendant United States of America**

88.     Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

89.     At all times relevant hereto, the individual Defendant Officers were acting under color of law and within the course and scope of their employment as police officers, all of which were acting under the direction of the USMS.

90.     All of the individual Defendant Officers who entered the Plaintiff's home and/or planned/supervised the search were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

91.     As more fully set forth above, the individual Defendant Officers committed acts of assault against Plaintiff in holding Plaintiff at gunpoint.

92.     The individual Defendant Officers acted intentionally.

93.     The acts of the individual Defendant Officers caused Plaintiff to reasonably apprehend imminent harm and/or offensive contact.

94.     The individual Defendant Officers acted without lawful justification.

95.    The individual Defendants Officers' acts of assault are wrongful torts under Pennsylvania law.

96.    Plaintiff suffered emotional and physical pain and suffering, which developed into a TIA, for which he seeks economic and compensatory damages in amounts to be determined by the factfinder.

97.    Defendant United States of America is liable for the acts of the individual Defendant Officers under the Federal Tort Claims Act.

**COUNT III:**
**TRESPASS**
**Federal Tort Claims Act**
**Plaintiff v. Defendant United States of America**

98.    Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

99.    At all times relevant hereto, the individual Defendant Officers were acting under color of law and within the course and scope of their employment as police officers, all of which were acting under the direction of the USMS.

100.    All of the individual Defendant Officers who entered the Plaintiff's home and/or planned/supervised the search were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

101.    As more fully set forth above, the individual Defendant Officers intentionally and unlawfully interfered with Plaintiff's enjoyment of his property and did damage to his property.

102.    The individual Defendants Officers' acts of trespass are wrongful torts under Pennsylvania law.

103.    Plaintiff suffered damages of the loss of the use of his property, costs of restoration, and other damages, for which he may recover economic and compensatory damages in amounts to be determined by the factfinder.

104.    Defendant United States of America is liable for the acts of the individual Defendant Officers under the Federal Tort Claims Act.

**COUNT IV:**
**NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**
**Federal Tort Claims Act**
**Plaintiff v. Defendant United States of America**

105.    Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

106.    At all times relevant hereto, the individual Defendant Officers were acting under color of law and within the course and scope of their employment as police officers, all of which were acting under the direction of the USMS.

107.    All of the individual Defendant Officers who entered the Plaintiff's home and/or planned/supervised the search were investigative or law enforcement officers, meaning any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

108.    As more fully set forth above, the individual Defendant Officers negligently inflicted emotional distress upon Plaintiff through their acts of illegally entering Plaintiff's home, holding Plaintiff at gunpoint, and illegally searching Plaintiff's home without his consent.

109.    The individual Defendant Officers owed Plaintiff a duty of care.

110.    The individual Defendant Officers breached the duty owed to Plaintiff when they illegally entered Plaintiff's home without a warrant and/or consent, held Plaintiff at gunpoint,

searched Plaintiff's home without justification; held Plaintiff outside in the snow; and mocked his mental disabilities.

111.    All of this placed Plaintiff in a zone of danger within which he could reasonably fear injury.

112.    The individual Defendant Officers' breach caused Plaintiff to fear for his physical safety and/or was unreasonably endangered.

113.    Plaintiff suffered emotional and physical pain and suffering, which developed into a TIA, for which he seeks to recover economic and compensatory damages in amounts to be determined by the factfinder.

114.    The individual Defendants Officers' acts of negligent infliction of emotional and physical distress are wrongful torts under Pennsylvania law.

115.    Defendant United States of America is liable for the acts of the individual Defendant Officers under the Federal Tort Claims Act.

**COUNT V:**
**NEGLIGENCE**
**Federal Tort Claims Act**
**Plaintiff v. Defendant United States of America**

116.    Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

117.    At all times relevant hereto, the individual Defendant Officers were acting under color of law and within the course and scope of their employment as police officers, all of which were acting under the direction of the USMS.

118.    All of the individual Defendant Officers who entered the Plaintiff's home and/or planned/supervised the search were investigative or law enforcement officers, meaning any officer

of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

119.    The individual Defendant Officers had a duty to act with reasonable care and to abide by the U.S. Constitution and follow its own practices and procedures in executing a search without a warrant.

120.    The individual Defendant Officers breached this duty of care by searching the home of Plaintiff without a warrant and without consent.

121.    The individual Defendant Officers' negligent acts are wrongful torts under Pennsylvania law.

122.    Plaintiff suffered emotional and physical pain and suffering, which developed into a TIA, for which he may recover economic and compensatory damages in amounts to be determined by the factfinder.

123.    The discretionary function exemption does not apply because the individual Defendant Officers' tortious actions also violated the United States Constitution.

124.    Defendant United States of America is liable for the acts of the individual Defendant Officers under the Federal Tort Claims Act.

<u>COUNT VI:</u>
**<u>ILLEGAL ENTRY, DETENTION, FALSE ARREST, & EXCESSIVE FORCE</u>**
**Deprivation of Fourth Amendment Rights Pursuant *Bivens v. Six Unknown Named Agents*,**
**403 U.S. 388 (1971)**
**Plaintiff v. All Individual Defendants**

125.    Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

126.    At all times relevant hereto, the individual Defendant Officers were acting under color of federal law and within the course and scope of their employment as police officers, all of which were acting under the direction of the USMS.

127.    Acting under color and authority of federal law, the individual Defendant Officers violated Plaintiff's Fourth Amendment rights to be free from baseless entry into his home, detention, arrest, unreasonable seizures, and excessive force.

128.    Some of the individual Defendant Officers personally supervised the illegal search.

129.    Plaintiff had no valid or legitimate connection to the fugitive that the individual Defendant Officers were searching for, did not have a warrant, and did not have consent to search the house.

130.    Despite this, the individual Defendant Officers entered Plaintiff's home under no exigent circumstances.

131.    An objectively reasonable law enforcement officer would know that no legal circumstances existed for entry into Plaintiff's home.

132.    Further, the individual Defendants Officers had no reasonable suspicion to detain Plaintiff.

133.    An objectively reasonable law enforcement officer would know that no arguable reasonable articulable suspicion existed to detain Plaintiff.

134.    Pre-existing law gave the individual Defendants fair warning that their actions violated Plaintiffs' Constitutional rights.

135.    Pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), Plaintiff is seeking to recover economic and compensatory damages for the Constitutional deprivations suffered at the hands of the Defendants in an amount to be determined by the factfinder.

136.    The individual Defendant Officers acted intentionally, willfully, maliciously and oppressively, thereby entitling Plaintiff to an award of punitive damages to be determined by the factfinder.

## COUNT VII:
## SUBSTANTIVE DUE PROCESS VIOLATION
**Pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)-- 5th Amendment**
**Plaintiff v. Individual Nonsupervisory Defendant Officers**

137.    Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

138.    Under the 5th Amendment of the United States Constitution, citizens are guaranteed the right to Due Process shall not be deprived of their life, liberty, or property without due process of law. Actions of government officials that demonstrate deliberate indifference to the rights and protections guaranteed to citizens represents a violation of their Due Process rights.

139.    Actions against federal officials seeking redress for violations of constitutional rights may be brought under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

140.    The Individual Nonsupervisory Defendant Officers improperly deprived Plaintiff of his liberty and property without justification.

141.    The Individual Nonsupervisory Defendant Officers knew, or should have known, they could avoided the incident had they obtained a warrant, obtained more substantive information about the subject of their investigation, or ended the search when Plaintiff revoked consent.

142.    By conducting, continuing, and failing to terminate the improper search and seizure, the Individual Nonsupervisory Defendant Officers knew or should have known that their actions would harm Plaintiff.

143.    The Individual Nonsupervisory Defendant Officers affirmatively used their authority as federal actors in deciding to continue the search of Plaintiff's home without consent or a warrant while holding Plaintiff at gunpoint.

144.    The Individual Nonsupervisory Defendant Officers' decision to conduct, continue and fail to end their search and seizure was so egregious as to shock the conscious.

145.    As a result of the above actions, individual Supervisory Defendants caused Plaintiff to be deprived of liberty and/or property and have violated his clearly established Fifth Amendment right under the United States Constitution to due process of law.

**COUNT VIII:**
**SUBSTANTIVE DUE PROCESS VIOLATION**
**Pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)-- 5th Amendment**
**Plaintiff v. Individual Supervisory Defendants**

146.    Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

147.    Under the 5th Amendment of the United States Constitution, citizens are guaranteed the right to Due Process shall not be deprived of their life, liberty, or property without due process of law. Actions of government officials that demonstrate deliberate indifference to the rights and protections guaranteed to citizens represents a violation of their Due Process rights.

148.    Actions against state officials seeking redress for violations of constitutional rights may be brought under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971).

149.    At all times relevant herein, the individual Supervisory Defendants were responsible for the conduct of all of the responding Defendant Officers.

150.    At all times relevant herein, the individual Supervisory Defendants were responsible for implementing the rules and regulations with regard to hiring, screening, training,

supervising, controlling, disciplining, and assigning the individual Defendant Officers to their duties regarding the incident alleged herein.

151.    Upon information and belief, at the time of the incidents in question, the individual Supervisory Defendants were responsible for establishing policies and procedures to be utilized by the Defendant Officers. Upon information and belief, the individual Supervisory Defendants have failed to promulgate appropriate written policies to address a range of subjects, including searches, seizures, excessive force, and arrests.

152.    In the alternative, the individual Supervisory Defendants allowed an unconstitutional custom with regard to searches, warrants, and seizures to exist. Further, the individual Supervisory Defendants' ratified this custom though their actions and inactions in this case.

153.    By failing to properly institute appropriate searches, seizures, excessive force, and arrests policies, train their officers regarding these policies, and ultimately enforce these policies, the individual Supervisory Defendants knew, or should have known, that they were putting the civil liberties of innocent citizens in danger.

154.    The individual Supervisory Defendants willfully denied Plaintiff the proper public safety measures which would have prevented his emotional and physical pain and suffering and violations of his constitutional rights.

155.    The deliberate indifference of individual Supervisory Defendants, included, but are not limited to, the following:

        a.    Failing to institute a proper searches, seizures, excessive force, and arrests policies that complied with the applicable standard of care;

b.  Failing to communicate and disseminate any applicable searches, seizures, excessive force, and arrests policies to their underlying officers, departments, and employees;

c.  Failing to enforce any applicable searches, seizures, excessive force, and arrests policies with respect to their underlying officers, departments, and employees; and,

d.  Refusing to consider the due process liberties of citizens when failing to institute, train, and enforce proper vehicle pursuit policies.

156.  As a result of the above actions, individual Supervisory Defendants caused Plaintiff to be deprived of liberty and/or property and have violated his clearly established Fifth Amendment right under the United States Constitution to due process of law.

## COUNT IX:
## RECKLESS DISREGARD OF SAFETY/ FEDERAL CREATED DANGER
### Pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971)
### Plaintiff v. Individual Supervisory Defendants

154.  Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

155.  The individual Supervisory Defendants had knowledge of the extreme danger to which they subjected members of the public, Plaintiff, during searches, seizures, excessive force, and arrests. They were also aware that they were able to terminate the searches, seizures, excessive force, and arrests at any time.

156.  The individual Supervisory Defendants intentionally failed to adhere to their duties as police officers with respect to public safety and searches, seizures, excessive force, and arrests, as described above, knowing or having reason to know that their acts and omissions created an unreasonable and substantial risk of harm to members of the public, Plaintiff.

157.    The improper conduct of the individual Supervisory Defendants was done in willful disregard of Plaintiff's safety and the conduct by the federal agents created an unnecessary and substantial danger to Plaintiff.

158.    As a result of the individual Supervisory Defendants' conduct, Plaintiff suffered damages, including those articulated herein.

159.    The actions and conduct of the individual Supervisory Defendants exceeded the normal standards of decent conduct and were reckless, willful, and unjustifiable and thus compensatory and punitive damages are necessary and appropriate.

## COUNT X:
## NEGLIGENCE
### Plaintiff v. City of Erie, Pennsylvania d/b/a Erie Police Department

160.    Plaintiff incorporates by reference and realleges each and every allegation stated in the foregoing paragraphs.

161.    Defendant Erie Police Department is liable to Plaintiff under Pennsylvania common law for damages arising out of willful misconduct.

162.    The willful misconduct of the Erie Police Department was the direct and proximate cause of the injuries and damages sustained by the Plaintiff. This conduct consisted of, but was not limited to, all or some of the following particulars:

a.    Failure to create, implement, and/or enforce effective policies and guidelines concerning the searches, seizures, excessive force, and arrests;

b.    Failing to effectively train, supervise, and/or discipline police officers with respect to searches, seizures, excessive force, and arrests;

c.    Failing to select and hire police officers that would competently adhere to searches, seizures, excessive force, and arrests policies;

26

d.    Failing to discipline police officers who violated searches, seizures, excessive force, and arrests policies, thereby creating and fostering an environment in which police officers believed their violations of said policies would be tolerated and/or condoned;

e.    Permitting police officers to initiate searches when those officers knew, or should have known, that the potential for harm, danger, and/or serious injury outweighed the seriousness of the investigation;

f.    Failing to effectively intervene to terminate improper searches, seizures, excessive force, and arrests;

g.    Failing to train and/or supervise police officers regarding how to conduct a safe and effective search; and,

h.    Failing to put an effective chain of command in place during searches, seizures, excessive force, and arrests.

163.    As a direct and proximate result of the willful misconduct of the Erie Police Department, Plaintiff sustained damages, including those articulated herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

a.    Assume jurisdiction over this action;

b.    Award judgment against Defendants and for the Plaintiff;

c.    Award Plaintiff economic and compensatory damages for mental and emotional and physical distress, anxiety, humiliation, and any other injury in an amount to be determined by the factfinders;

d.    Award Plaintiff punitive damages against the individual Defendants in an amount to be determined by the jury to deter each Defendant and others from similar misconduct in the future;

e.    Award Plaintiffs reasonable attorney's fees, expenses and costs of litigation pursuant to applicable state and federal laws;

f.    Award Plaintiff pre and post-judgment interest;

g.    Award Plaintiff such other relief as this Court deems just and proper; and,

h.    Jury trial and against the individual officers and Erie Police and bench trial against the United States of America.

Dated: March 12, 2025                    Respectfully submitted,

*/s/ Sara J. Watkins*
SARA J. WATKINS, ESQUIRE
PA ID NO.: 325770
D. AARON RIHN, ESQUIRE
PA ID NO.: 85752
ROBERT F. DALEY, ESQUIRE
PA ID NO.: 81992
ROBERT PEIRCE & ASSOCIATES, P.C.
437 Grant Street, Suite 1100
Pittsburgh, Pa 15219
Tel: 412-281-7229
Fax: 412-281-4229
Email:  swatkins@peircelaw.com
         arihn@peircelaw.com
         bdaley@peircelaw.com

*Counsel for Plaintiff*